

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Geo. H. Sheppard
Comptroller of Public Accounts
State of Texas
Austin, Texas

Dear Sir:

Opinion No. 0-5570
Re: Under the provisions of House
Bill 247, 48th Legislature, may a
bonded and licensed distributor
take credit on a subsequent monthly
report and tax payment for motor
fuel sold in intrastate commerce to
an out of state customer for the
purpose of exportation when said
motor fuel is thereafter exported
by the customer rather than by the
distributor?

In your letter of August 20, 1943, you state the
following facts:

"House Bill 247, Acts of the Regular Session of the
48th Legislature, amended Section 13 of the Motor Fuel
Tax Law to authorize bonded and licensed distributors of
motor fuel to take credit on a subsequent monthly report
and tax payment for motor fuel purchased tax paid and
thereafter exported, or sold to the United States Govern-
ment for non-taxable purposes. This provision as amended
reads as follows:

"'If any person shall export or lose by fire or
other accident any motor fuel in quantities of one hundred
(100) gallons or more, so that the same may never be made
use of within this State, after the tax has been paid on
such motor fuel, or shall sell motor fuel upon which the

Hon. Geo. H. Sheppard, page 2

tax has been paid, in any quantities, to the United States Government, for the exclusive use of said Government, claim for refund of the tax so paid may be made in the manner herein provided, or as the Comptroller may direct. Provided, however, that showing must be made that said tax was paid or accounted for by a licensed and bonded distributor, and the Comptroller shall deduct from such refund the one (1) per cent allowed to distributors making the first sale, distribution or use of motor fuel in Texas. Provided, further, that a bonded and licensed distributor may, in lieu of filing claim for refund of the tax paid on motor fuel thereafter exported, or sold to the United States Government for the exclusive use of said Government, take credit on any monthly report and tax payment made to the Comptroller within six (6) months of the date of said sale or exportation, for the amount of tax so paid.'

"Several Texas distributors with places of business located along the border lines of adjoining states and Old Mexico sell motor fuel to out of state tank truck operators who come into the State and purchase the motor fuel from said Texas distributors and then transport the motor fuel back into their own state or into Mexico. Your opinion No. O-2488, written prior to the above amendment, held that such sales were of intrastate character and were thus subject to the State tax though the purchaser could obtain a refund of said tax if and when he exported the same.

"As a matter of business convenience these Texas distributors desire to relieve the out of state tank truck purchasers of the burden of filing claims for refund of the tax. The distributors propose to pay the tax themselves and then sell the tax paid motor fuel to the out of state truckers and when they have been furnished with sufficient proof of export by the tank truckers the distributors will take credit on their next or a subsequent tax report and remittance for the tax originally paid to the State by them. The tank trucker will then be given credit for the tax paid to the distributor upon his next purchase from said distributor.

"Two of the major distributors have construed the underscored paragraph of the above quoted amendment to authorize such procedure and have requested an opinion as whether their construction harmonizes with our view of the amendment."

Hon. Geo. H. Sheppard, page 3

And you request our opinion as follows:

"Will you therefore please advise us whether or not, under the amendment as quoted hereinabove, a bonded and licensed distributor may take credit on a subsequent monthly report and tax payment for motor fuel sold in intrastate commerce to an out of state customer for the purpose of exportation when said motor fuel is thereafter exported by the customer rather than by the distributor."

We answer your question, no.

The Motor Fuel Tax Law in effect at the time of this amendment did not provide for a refund of the tax paid on motor fuel sold to the United States Government for its exclusive use. The above quoted amendment was passed to correct this defect in the law, and also to allow "bonded and licensed distributors" to take credit on their monthly reports made to the Comptroller for the amount of the taxes paid on motor fuel exported by them or sold to the United States Government for its exclusive use. In an effort to conserve the transportation facilities during the war emergency, the Government requires each distributor to supply motor fuel from the nearest source of supply to the delivery point, regardless of whether such source of supply was a refinery of the distributor or belongs to another. If the motor fuel supplied by a distributor for exportation or sale to the United States Government came from a refinery not owned by the distributor making the sale, there was no provision in the law for the distributor to recover the taxes paid except by filing a claim for refund. This created a useless burden upon the Comptroller and the distributors. It was not contemplated, however, that a bonded or licensed distributor could take credit for the tax paid on motor fuel sold to out of State truckers. Such a construction would authorize distributors to ascertain facts about exportation and sale to the United States Government for its exclusive use, thereby usurping the function of the Comptroller, who is charged with the duty of collecting the motor fuel tax.

APPROVED SEP 14, 1943

FIRST ASSISTANT
ATTORNEY GENERAL

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Thos. B. Duggan, Jr.
Assistant

APPROVED
OPINION
COMMITTEE